We will move on to the third case set for argument today, U.S. v. Robert Demaria, Appeal 18-3030. We will begin Mr. Hillis' perhaps unprecedented marathon appearance here this morning. Good morning. May it please the Court. I am only doing four, you are doing six. I feel like a slacker, but I'm going to get it on my way. We get to ask the questions, however, and so that's an easier job than answering them. So I'm with the Federal Public Defender's Office. I represent Mr. Demaria, and he raises a variety of issues in this case. I'd like to begin with the waiver contention by the government. So the government says that Mr. Demaria has waived the alcohol objection, for instance, and it's more pointed in its waiver argument as to this, so I want to specifically address it. And begin by saying that Rule 51b doesn't require a party to object after a sentence has been imposed, and here the judge imposed the alcohol condition, then made multiple statements, and the defense says we have no objection, but due to the multiple nature of the judge's statement and the fact that the condition was already imposed, I don't think that the waiver argument really gets traction by virtue of 51b and the case law. What about the fact that the alcohol condition was in the PSR, no objection to it was filed with objections to the PSR, and there were other objections that were filed, and when the court specifically asked if there were any additional objections, the response was no. Under our precedent, why wouldn't that waive this argument? Sure. It's because under seals and cases like that, we're looking at a miss, not an intentional waiver. A waiver, of course, is the intentional relinquishment of a known right. But we have found in some of our cases that if you have notice, you have the opportunity to object, and you don't object, and certainly if you do object to some things and not others, that there is intentional waiver. Why wouldn't that apply here? Well, first of all, let's begin with, Your Honor correctly said, in some cases. So there are some that that's the case. Of course, that means there are some where it's not. And waiver is supposed to be a liberal construction in favor of defense. Let's start with the cases where it is. Would you agree that if we apply, and I agree there is some inconsistency in the case law here, but under those cases where it's very clear, you get notice, you have the opportunity to object, you don't object, or you do object to some, and you don't object here, that there is waiver. Sure. You can find cases like that. There's Gamilla. There's Block. And so we fully acknowledge those. We mentioned them in our brief. We distinguish why we think this case is different from those. And we can also point to the inconsistency in the court's jurisprudence on this subject. And then we want to zero back to what the bedrock is on this. And that's Supreme Court precedent about liberal construction of waiver. And so these are misses, and they are. And we've got then a right that is protected by the First and Fifth Amendment here. Let me get you to react to something, Mr. Hillis. It's really hard for me when I read this transcript, I almost think it's a model of care by the district court. I mean, he nearly does a page turn of the PSR. And at every point he's asking, is there an objection? Is there a concern? A few of them, as you know, are modeled. A couple of them are adjusted. And when I read it, I also read the defense counsel at the time to be taking a lot of care with respect to what battles he's going to pick on supervised release because he doesn't have a very good hand factually when it comes to this particular defendant and his offense conduct. And so we end up with the transcript. Start with the PSR. There's a little bit of tinkering on a couple of these adjustments. There's no concern raised with it. And here we are on appeal looking at conditions and trying to almost hypothesize. Are they clear enough? Are they vague? Can we come up with an example of somebody consuming alcohol to religious service or eating an alcohol cookie that contains alcohol filling? I just think it almost has an air of unreality to me. I feel like, what are we doing? So, Your Honor, conditions are discretionary. They don't have to be imposed. I'd start with, why are we doing it this way? And it's a common practice for district courts brought in the course of 30 years doing it this way that probably got out of the gates wrong. So breaking that habit started way back. It's five years now or so, right, on Thompson, on Cappus, on these things. We've cited authority from then about jurisdiction, for instance. So you say it's model clarity and careful page turning. I'm just thinking, what more could have been done? Well, we can start with that one, for instance. If this has been something that has been carefully attended to by the district court, probation office, prosecutors and defense, I don't think that we'd have that condition still in there. What more could the district court have done here? Let's stick with your alcohol objection. What more could he have done here? Well, I would say look at the statutory factors for the imposition of the condition and make sure those are met. They weren't. So he recited what the condition was, but he did not look at the statutory factors that supported the imposition of the condition. If he had, he'd realize that my client didn't have a present alcohol problem. There was not something there. There was evidence in the PSR that your client had drank alcohol every day for three years prior to the incident here, that his sister had said they had a history of alcohol problems, and that his own psychotherapist said he shouldn't be drinking alcohol. May I, Your Honor? What more? Sure. A family history doesn't mean that everybody in the family has the same problem. It's a factor. I just gave you three factors that all go together that are all in the record that pertain specifically to your client. What more could the district court have done? Right. So because conditions of supervised release are supposed to be particular, as all aspects are of a sentence, looking at the family history is a place to start but not a place to end. And he did not start and end with that. Sure. But you're addressing three factors, and I just want to respond to them. So that's one. My client does not have an alcohol problem. There's not been a diagnosis. He's not an alcoholic. He has a history of abuse, but even in the government's own brief and in the transcript it says that abuse ended. So there's not an ongoing alcohol problem. He also has 132 months of forced sobriety in prison. I don't think that he will necessarily have an alcohol problem when he comes out. Why are we imposing an alcohol condition now based on these facts instead of waiting for circumstances to arise later where maybe he does have an alcohol problem? It's demonstrated and ongoing. He could have said that. He's got a lot of problems, but alcohol is not one of them. Sure. So he could have. That's a miss. It shouldn't be there. It's not supported by the statutory factors. In fact, he said, we have no objection to that. Your Honor, there are two sentences that were said. So the judge said about the alcohol condition, and then he said about what the therapist said, and he said we have no objection to that. I don't think that it's exactly true. And the therapist said the therapist was the one who recommended that there should be no alcohol use at all, defense counsel. We have no objection to that, Your Honor. Right. Sounds like a no objection to the no alcohol use supervised release condition. Your Honor, you read it differently than I do. I think he's confirming the factual. I'm not sure how else with a straight face you can read that, Mr. Hill. It's not a problem at all on a straight face with a straight record. So the record says about what the therapist said to be done. He acknowledges it. He says I have no objection to that. When he's talking about what supervised release conditions to impose. Sure, he is. But he's also stating what the facts are. And the lawyer says no objection to that. I know in prosecutor's school, as in defense school, they'll say don't ask compound questions. Get a clear answer on something. This didn't happen this way. But I still say it's a misjudge for what the statutory factors are. They are not attended to. There is not a finding that supports the condition under the present circumstances. So even though the lawyer may have said that, and I'll grant you he does, of course, but that doesn't confirm to me that this was something that is still statutorily appropriate here under the circumstances for Mr. DiMaria, which is our North Star for imposing a sentence on anybody. If I may move past, I don't see any more specific references to conditions that we'd have the same waiver contention for the remaining conditions. So I don't think that the government's contentions about the waiver are well-founded in regard to that. I do not see a strategic reason here where they say he agreed to a long period of supervision and mental health treatment, why that would mean then I would agree to all conditions across the board that may not be applicable. You're still supposed to make findings as to that. I thought the strategy was pretty apparent. That is, I want to try to cut down prison time as much as I can, and I'm willing to accept very stringent terms of supervised release in return for that. Of course, those that are applicable he would gladly accept. Without that qualification. And maybe he'd even be willing to accept some unconstitutional conditions in return for getting out of prison. I'm not certain if that's well advised, to agree to unconstitutional conditions. Probably not, probably not, but you don't have to fight every battle, and you particularly don't want to indicate to the sentencing judge that you want to push the boundaries of what you might be permitted to do on supervised release. You want to tell the judge, I'm going to be as far away from those boundaries as I can, straight and narrow forevermore. Judge, we've got a fundamental problem here, that when you show up and they have a laundry list of conditions, that many of them have been repeatedly said by this court, don't do this. Inform people of risks, vague. Remain in the jurisdiction, vague. But they're all here. What are you to do when you show up all of the time in front of the judges, when the judges keep imposing these conditions, keep including these conditions, keep coming to you. You tell the judge. That's right. And yet it wasn't done, which doesn't tell me that it was strategic. It was a miss. So let me ask, Mr. Hillis, let me ask. You've relied heavily in response to the waiver argument on the Adkins case, and on a due process theory to avoid waiver. Do you read Adkins as entitling a defendant to raise any due process argument, even if it has been waived, or do you read it as saying that the circuit court may excuse waiver in sufficiently compelling cases? Judge, given the nature of the due process problem, and the fact that in Adkins the claim survived a written waiver, I think that it is pretty emphatic that despite a written waiver, if there is a legitimate due process problem, that you are entitled to raise the claim despite a waiver. And the court must hear it and entertain it on the merits, or may hear it? I think it's a must. I think it may deny, if you disagree with this, that it's a due process problem. The problem, of course, is, and why it survives, the waiver, written or oral, is that we know under Hill and under Hoffman Estates, and a litany of cases, Adkins included, that a person is supposed to have notice about what's required of them. And it's a simple task, Molina's, Martinez, you pick, to remand a case for clarification on conditions. We know there are other conditions that should be clarified here, too. And we should get these out of the familiar elbow list of conditions and start, again, going back to what conditions need to be imposed and begin with fewer of them. So is it your... I'm sorry, go ahead. No, go ahead. I'll follow you. Is it your position, Mr. Hillis, that if this is remanded, that the district court could say, okay, well, I impose these extra conditions and a shorter prison sentence because it made me think that if he stays on a short leash when he's out, I don't have to worry about the 3553A factors, such as danger to the public, et cetera. But now he's subjecting to these, so I'll sustain some of these. But instead of my 132 months that I gave because of these conditions, that I'll now give maybe a bottom-of-the-guideline range, 210 is more appropriate without some of these. Is it your position that that would be appropriate? The judge has wide discretion in sentencing. I would worry that the judge may be biting off a vindictive sentencing challenge claim on a subsequent appeal. If there is something to really show that lacking these conditions, dramatically increasing the sentence, would be necessary, I'd be interested to hear it. Well, that was certainly the argument that you could read from the submissions by defense counsel below. And if the judge thought that was true, is it your position the judge could increase the prison time here and sustain some of these subjections that you're now objecting to? I think it's also within the realm of possibility. But I think there has to be fabric. Does your client agree with that? Your Honor, I think I'd inform my client of the relative risks, and we understand that if you unwind the sentencing package, this is a possibility. But there's this possibility too, Pepper v. United States. My client's doing great in prison. If you see a whole bunch of conditions that shouldn't be imposed, there's every indication that he is engaged in post-rehabilitation conduct such that the sentence should be shortened. That's a possibility too. And so if we go back and there's greater examination, I think it could tilt either way, and I understand what you're pointing at, and that is a possibility. This dialogue right now is in part what I just was really surprised to see that Mr. DiMaria wants to challenge on vagueness grounds the covert photography condition. On this fact pattern? I don't know what it is. You've got to be kidding me. Judge, anything that can be, I forget what the government described it as, trying to explain what the condition is. It was no clear to me from the government brief that you'd know that. I saw what you read in your brief, but I can't even utter out loud how it's vague. I don't get it at all. I don't know what a device is with a non-obvious camera function still in reading the government's brief, Your Honor. I just don't. If you want to say don't have a camera. I could call the probation officer, Courtney, and say this is what I have in mind. Is it okay? I don't think we can do that under Thompson, under Kappus, Judge. It said don't ask probation officers. Ask the judge for your clear condition. That's where I'd land on that. He's got to be careful what he's asking for. Well, Thompson, I'm sorry. Your Honor, there's that risk, but there's an easier way to do this. If you think that he shouldn't have a camera, then say that. Well, he must think he should have a camera. An individual that engaged in this offense conduct must have in mind some camera that he intends to use. And I've got to tell you, I don't think Judge Chang would be interested in saying what exactly do you plan to do. Your Honor, there are lots of things that somebody may have that could be used for criminal purpose and probably the great majority of applicable uses are non-criminal. So banning the camera for somebody who never took an image of somebody, he did possess, he did distribute, but he's not produced child pornography. I quite understand the loathsome nature of child pornography, but the idea that everybody is going to be a producer or a hands-on offender is just not consistent with the literature on this such that the condition could be supported on that ground. I'm into my, what would have been my rebuttal, unless the Court has other questions about the remaining conditions. Thank you, Mr. Gilles. Thank you. Let's see. It's Ms. Kostanek for the United States. Good morning, and may it please the Court. The District Court certainly did not err in imposing the supervised release conditions. Not a single one of these arguments was made in the District Court. This is quintessential waiver. The government recognizes that there is some ambiguity in this case law, but the most recent cases of this Court, including Smith, which was decided near the end of 2018, makes very clear that if there is an opportunity to object, for example receiving the PSR that has these conditions listed, there was no apparent misunderstanding by the defendant or defense counsel, and there is an affirmative statement that there is no objection, that constitutes waiver. And there is some language in Smith that says that sentencing as a whole is a fraught matter for defendants, but people must raise their objections in a timely fashion so that the Court can take appropriate steps. Ms. Kostanek, in determining what constitutes waiver, is it your position that if the PSR is provided and the PSR includes a list of the supervised release conditions and no objections at all are filed, and at the beginning of the sentencing, the Court goes through what most District Court judges do, have you reviewed the PSR, any objections, answer no, would that be sufficient for waiver, or does there have to be some focus on do you have any objections to the proposed conditions of supervised release? I do think, so it needs to be an intentional relinquishment. It needs to be clear that the District Court is talking about the proposed supervised release conditions so that there is an appropriate notification to the defendant. There needs to be a dialogue with the District Court, and that certainly happened here. And I guess my question is just a little more general one. Would you meet those specific qualifications to establish an intentional relinquishment if when asking about the PSR and objections to the PSR, the Court did not specifically mention do you have any objections to the proposed conditions? I know that didn't happen here. That's a general question. I think it's going to depend on the case, in part because there needs to be, as this Court has said, some strategic rationale for it. So here, that's provided by, as your honors have mentioned, the idea that he was seeking a shorter prison term in exchange for that longer or more restrictive supervised release. But there has to be something in terms of the strategy of the case or the dialogue with the District Court or the discussion on the record, kind of in the totality of those circumstances, that indicates that it's intentional and has some strategic element to it to comport with the Court's case law outside of the supervised release context as well. Do we have to be able to somehow articulate from the record a strategic rationale in order to honor a series of no objections? Yes, I think so. But there is, by its nature, a strategic rationale. Think about jury instructions. No objection, no objection, no objection. We don't insist on strategy. Well, there's a benefit to the defendant in not making frivolous objections, right? In that case, then every no objection has a strategic purpose, and it doesn't really add a whole lot of value. If it's knowing, yes, if it's intentional. And that is dictated by the circumstances of whatever the issue is. So here, you can read in that strategic rationale from what's going on in this context. So the conditions of supervised release are being agreed to. He's seeking a way-below-guidelines sentence. He's making clear to the district court that he does not have objections to these types of restrictions while he's on release in an effort to say he doesn't need to spend more time in prison. And that qualifies under Smith and this Court's other case law regarding waiver. Do you worry about if we have a strategy dimension to the inquiry, do you worry about a transcript where everything that Judge Saney described happens? Did you get the PSR? Yes. Did you review it with your counsel? Et cetera, et cetera. And then there is a condition in there that really is vague that should be objected to. There should be a concern raised about. And nobody can think for the life of them why in the world he wouldn't have raised this. Well, I want to just be clear about the strategy component to this because I believe that what the case law says is the strategy behind the waiver is one of the ways that the court determines whether it's intentional. So I don't know that it needs to stand alone as the only way you tell if something's intentional versus forfeited where it's just not raised, but it is one component of this determination. And does it have to be there? Do we have to make a strategy determination? I understood you earlier saying you have to have all these other things and the court has to be able to determine that there was a strategic reason for this. Wouldn't it just be sufficient to make a knowing waiver if it's clear that the defendant reviewed the conditions, understood the conditions, and didn't object to them? And I apologize for not being clear before, Your Honor. I do think that there can be situations where waiver is appropriately found, where it is made knowingly and intentionally. There may not be an obvious strategy behind it other than, for example, not raising frivolous arguments, not raising arguments that aren't grounded in the record, for example. And that comes up in the context of jury instructions and outside of the supervised release context as well. I mean, you see that a little bit in Smith and these other more recent supervised release cases too, where it doesn't focus so much on the strategy as it does on there's notice, there was an opportunity to object, there was an understanding by defendant and defense counsel. And in those situations where these arguments are not raised to the district court, they shouldn't be raised for the first time on appeal due to creative lawyering by appellate counsel. And that's demonstrated in this case by the alcohol ban. So all of the arguments that are raised now with regards to religious freedom, there's no record in the district court. There's not a single shred of evidence with regards to the defendant's religion, his practices in terms of taking communion, and all of the things that he argues on appeal. And it demonstrates why it's important to adhere to this determination of waiver in this context.  In your time in the U.S. Attorney's Office and your knowledge of the case law around the country, have you seen a supervised release violation filed on the basis of consuming wine at a religious ceremony? No, I personally have not. And I think that that's another reason that this challenge is not meritorious, is that there's no reason to believe that the district court would revoke the defendant on the basis of taking communion. And I think that that allegation is not grounded in reality. Ms. Costana, can I ask you your thoughts on Adkins? Yes, sir. And whether you think that, I mean, it at least says this court is retaining discretion to review the merits of due process problems. Do you think it also requires us to do so? I do not think it does. So Adkins was raised for the first time in the reply brief. According to my research since then, is Adkins has been severely limited by this court. So there are a number of decisions, including as recently as January of 2019, where the court has discussed Adkins and said, it is limited by its facts. So the court listed in this opinion that I'm referring to called three distinguishing factors. It talked about how Adkins dealt with a First Amendment challenge and that made it distinct. It also referred to the fact that in that case, that was distinguishing it, that the defense had an opportunity to make an objection below in addition to other distinguishing factors. I also will note that in a supervised release context, so Adkins was decided in the appellate waiver context, but in a similar context where there was a vagueness challenge raised to the district versus jurisdictional kind of condition on vagueness grounds, this court has said Adkins was not applicable. It decided, it affirmed the decision of the district court on waiver grounds and said, we are not obligated by Adkins to find that there is a, some sort of due process or constitutional exception to waiver in this context. So all of that indicates that the defense far over reads Adkins for the district court. If there are no further questions from the court, the government asks that the district court, I'm sorry, that this court affirmed the district court's judgment. Thank you. Okay. Thank you, Mr. Skany. Mr. Tillis, I'll let you decide how to marshal your energy, but if you want time for rebuttal, you've got a couple of minutes here. I appreciate the extra time. Thank you. So I'll begin with strategy and why that's going to be a problem. We can always swallow up every objection, everything that may come later by pointing to, well he asked for a sentence of this type below, so it must be strategic and therefore didn't make any claims about this. And he's up on appeal. That's going to eliminate a lot of opportunities for us by ineffectually pointing to strategy that's to be divine from the record below. So we've got cases about notice and opportunity to object. Seals, Jenkins, Gill, all of them allowed relief. They had guideline issues. They had supervised release issues, at least in Gill. And so I don't think that we can say that there is a delineation between those cases and cases like this. And if we're going to say about notice and opportunity to object, I guess those cases have to be decided wrong, or there's just a difference between the jurisprudence there and the cases that the government wants to cite about notice and opportunity to object. If there is, Judge Scudder, a problem about alcohol consumption, nobody's ever been revoked on it as of yet. And I don't know if they have, but it's very easy just to make a carve out in the condition to say no alcohol consumption with the exception of in connection with your religious observances. Very easy. That's why I think the defendant should have tapped his lawyer on the shoulder and said, Hey, I'm going to be, I'm planning on attending religious services. Right. I mean, that would have been great. It didn't happen though. And my client goes to prison and says, can I just speak my religious observances? When he gets out, one of the first things he should do is pick up the telephone and call his probation officer and say, I'm planning on going to religious services. I'm sure that's going to get a very positive reaction. And then they can file a modification to the terms of supervised release. Sure. I would hope so. But we also know from the court's case law on this, that it's a hassle. It's been described as a hassle. It's difficult. You don't have a lawyer. You should do this on the appeal just as much as you could do it then. I'm here to represent my client presently. I don't know what his opportunities will be later. Adkins did not say it was limited to its facts. It did not. And so the effort to limit it to its facts now may be an effort to put the genie back in the bottle, but I don't think that's consistent with the text of Adkins. And yes, there was a first amendment aspect, but there was also a fifth amendment aspect. If you don't know what the condition prohibits, that puts you at risk of revocation under 3583 E3. And so the clarity of the condition is essential. Similarly, if we have here no carve out for incidental contact, when my client goes through a drive-thru, walks through a store, has contact with somebody, I guess he can go back to prison for that under the text of the condition. I hope that it wouldn't happen. But why isn't that in there? It should be. We've got a case law that says don't have conditions requiring somebody to report risks because nobody knows what they are. That's in here too. Jurisdiction. It's in here. Division. In here. If we can define these things, we don't have these problems and the extent of the deprivation must be apparent to the client if he is going to, to the defendant, if he is going to knowingly waive and is evident here. My client didn't know that by agreeing to a condition, he will be at risk of being thrown back in prison for incidental contact or for leaving the division, whatever that is. He'd go back to prison for that. We're not reporting his risks, et cetera. I think I'm making the points. You can accept them. You can reject them. But I think that they are validly contested here on the appeal. Thank you. Thank you, counsel. Thanks to all counsel. The case is taken under advisement.